# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 24-0149V

| | |
|---|---|
| MELISSA FRENCH, | Chief Special Master Corcoran |
| Petitioner, | Filed: April 21, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*John Beaulieu, Siri & Glimstad LLP, Louisville, KY, for Petitioner.*

*Ryan Pohlman Miller, U.S. Department of Justice, Washington, DC, for Respondent.*

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

On January 31, 2024, Melissa French filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered from Guillain-Barré syndrome ("GBS") following an influenza vaccine she received on October 19, 2022. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons discussed below, Petitioner's Table GBS claim must be dismissed because the evidentiary record does not support the conclusion that the onset of her GBS

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

symptoms began between 3 and 42 days after her vaccination, as required for this Table claim. This leaves a possibly meritorious causation-in-fact claim to be adjudicated, but one that is likely to require medical expert testimony. Therefore, dismissal of the Table claim will be accompanied by transfer of the case out of SPU for further proceedings.

### I.    Relevant Procedural History

Approximately 14 months after this case was initiated, Respondent filed his Rule 4(c) Report arguing that Petitioner had not established entitlement to compensation. ECF No. 25. Respondent specifically maintains that the onset of Petitioner's GBS symptoms does not fall within the required timeframe for a Table GBS claim. Rule 4(c) Report at 13. Respondent further argued that Petitioner's Covid-19 infection immediately before her vaccination could be a likely alternative cause of her GBS symptoms, and that her prior history of strokes complicates the analysis of her neurological functioning. *Id*. 13-15.

### II.    Medical History

Approximately two months prior to her vaccination, Petitioner suffered a stroke that left her with ongoing left-sided neurological deficits. Ex. 3 at 71, 95. Petitioner also reported that she tested positive for Covid-19 on October 9, 2022, ten days prior to her vaccination. Ex. 2 at 15-16.

On October 19, 2022, Petitioner received a flu vaccine from her primary care provider. Ex. 3 at 15-16. Two days later, Petitioner went to the emergency room with complaints of chest pain that radiated to her left arm and leg. Ex. 5 at 8. She reported that her pain began approximately ten hours prior, that she had woken up with blurry vision in her right eye, and that she had constant tingling down her left arm. *Id*. She was given antibiotics and discharged. *Id*. at 12.

Petitioner went to another emergency room at a different hospital about two hours after her discharge. Ex. 3 at 959. She now reported severe left flank pain for approximately 24 hours, along with nausea and vomiting. *Id*. at 962. Petitioner was treated for her pain and discharged. *Id*. at 970. She returned again to the same emergency room later that same day (October 22, 2022) with continued complaints of lower back pain. *Id*. at 1042. This time, she also reported numbness, tingling, and weakness in both legs and hands and difficulty with urinary incontinence. *Id*. Petitioner's daughter reported that Petitioner began experiencing numbness and tingling to her left arm and leg on Thursday (two days earlier and one day post-vaccination). *Id*. at 1048. Petitioner was admitted, diagnosed with GBS, and treated with IVIG. *Id*. at 1058. Her EMG showed "evidence of severe generalized polyneuropathy with acute denervation." *Id*. at 1060. Petitioner also had a brain MRI that revealed a "new stroke of the deep left corona radiata." *Id*.

Petitioner continued to receive treatment at this hospital through October 31, 2022. Ex. 3 at 1058. On the day of her hospital discharge, Petitioner's neurologist thought Petitioner's Covid-19 infection "may have provoked" her GBS and that it was less likely to have been caused by her flu vaccine or gastroenteritis. *Id.* at 2788. She was transferred (on a ventilator) to a long-term acute care facility where she remained until November 8, 2022. Ex. 3 at 2768, 2780. Petitioner then remained in long term care facilities through May 20, 2023. Ex. 4(b) at 1348-49. She then continued to receive treatment on an outpatient basis.

## III.    Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did

3

not exist. *La Londe v. Sec'y of Health & Human Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, GBS is compensable if it manifests within 3-42 days (not less than three days and not more than 42 days) of the administration of an influenza vaccination. 42 C.F.R. § 100.3(a)(XIV)(D). (Further criteria for establishing a GBS Table Injury case be found under the accompanying qualifications and aids to interpretation. 42 C.F.R. § 100.3(c)(15)). Any onset outside that timeframe prevents the matter from succeeding as a Table claim, although it can often still be maintained as a non-Table, causation-in-fact claim. All GBS Table claims also require "the absence of an identified more likely alternative diagnosis."

## IV.    Finding of Fact

Petitioner alleges that she suffered a Table GBS injury following a flu vaccine she received on October 19, 2022. Amended Petition at 1, ¶53. The Amended Petition itself alleges that Petitioner first sought treatment for symptoms, including "tingling that radiated down her left arm and leg" on October 21, 2022 - *two days* after her vaccination. *Id*. at ¶4. Petitioner's medical records also consistently place the onset of Petitioner's symptoms sooner than three days after her vaccination. *See e.g.*, Ex. 3 at 962 (Two days after vaccination, Petitioner reported severe back/flank pain for the previous 24 hours); Ex. 3 at 1048 (Petitioner began experiencing numbness and tingling

one day after vaccination); Ex. 5 at 8-12 (Petitioner reported chest pain for ten hours with constant tingling down her left arm two days after vaccination). And no records place onset within the required timeframe for a Table GBS claim. Therefore, Petitioner's Table claim must be dismissed, and the claim can only proceed as a causation-in-fact claim.

In addition to the onset issue, Respondent argues that "Petitioner's Covid-19 infection is a clear potential alternate cause for her GBS." Rule 4(c) Report at 13-14. Further, Petitioner also suffered one or more strokes in close proximity to her GBS diagnoses that contributed neurologic symptoms. *See e.g.*, Ex. 3 at 71, 95, 1060. These issues are likely to require medical expert testimony to resolve.

## Conclusion

Petitioner cannot preponderantly establish that her GBS onset began within the Table's defined timeframe, and thus this claim can only proceed as a causation-in-fact matter. Accordingly, the case shall be transferred out of SPU for such resolution. Petitioner's Table GBS claim is therefore DISMISSED, and the case will be reassigned to a Special Master outside of the SPU.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master